ORCHID SOFTWARE, INC., Appellant,

v.

PRENTICE–HALL, INC., Appellee.

No. 3–90–076–CV.

Court of Appeals of Texas,
Austin.

Jan. 23, 1991.

Rehearing Overruled Jan. 23, 1991.

Second Motion For Rehearing
Overruled Feb. 27, 1991.

Thomas M. Booker, Austin, for appellant.

R. James George, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

## ON MOTION FOR REHEARING

JONES, Justice.

The opinion issued by this Court on December 5, 1990, is withdrawn and the following is substituted therefor.

Appellant Orchid Software, Inc., plaintiff below, complains of the trial court's summary judgment that it is not entitled to recover lost profits from appellee Prentice–Hall, Inc. on Orchid's suit for breach of contract, breach of the duty of good faith, violations of the Texas Deceptive Trade Practices Act, and tortious interference with contract. We will reverse the judgment and remand the cause.

By contract dated January 1983, Orchid promised to develop a line of accounting and business-management computer programs in return for Prentice–Hall's promise to publish and market the programs. Orchid was to receive 40% of the royalties for program sales; Prentice–Hall was to receive the remainder. In addition, Prentice–Hall agreed to fund, partially, the development of the programs by periodically paying Orchid advances against Orchid's anticipated royalties from sale of the programs. As Orchid successfully passed

each testing phase of a program's development, Prentice–Hall would pay certain costs. Prentice–Hall had authority to determine program development order and establish testing procedures. There were two test stages, the successful completion of each of which triggered development cost advances against royalties.

Orchid, at that time a new company, began developing the programs, although at a slower rate than the parties had anticipated. Prentice–Hall was not satisfied with the pace of production. Orchid experienced cash flow problems, further slowing progress on the program line. In an apparent effort to alleviate the cash flow difficulty, Prentice–Hall's president indicated by letter that it would abandon its testing/payment procedure and "advance" Orchid a flat amount of approximately $150,-000 per month. Although the parties dispute the exact nature of the advances and whether Prentice–Hall was contractually bound to pay them, both admit that Prentice–Hall "canceled" the entire contract with Orchid in December 1984.

Orchid sued Prentice–Hall for breach of contract and various other claims, seeking lost profits of almost $27 million. Prentice–Hall moved for summary judgment, arguing that Orchid had no right to recover lost future profits because it had not earned a profit from the time it started doing business in 1982 to the time it ceased doing business in January 1985. The trial court granted Prentice–Hall's motion for summary judgment as to lost profits, but concluded that Orchid was still entitled to seek additional development advances that it claimed Prentice–Hall had promised to make through December 1984. Accordingly, the court severed the lost future profits issue from the remaining issues. The judgment in the severed cause is the judgment from which Orchid now appeals.

As summary judgment movant, Prentice–Hall had the burden to show that no genuine issue of material fact existed and that, consequently, it was entitled to judgment as a matter of law. In determining whether Prentice–Hall succeeded in showing that no material factual dispute existed, we will assume the truth of evidence favorable to Orchid, the non-movant, indulge every reasonable inference in Orchid's behalf, and resolve any doubts in Orchid's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The general rule is that an injured party may recover damages for lost profits by showing that the loss is a natural and probable result of the act or omission complained of and that the amount of profits that the party would have earned is reasonably certain. As Prentice–Hall points out, the certainty requirement has often been held to prevent a new business enterprise from recovering any lost profits. *See Atomic Fuel Extraction Corp. v. Estate of Slick*, 386 S.W.2d 180, 189 (Tex.Civ. App.1964), writ ref'd n.r.e. per curiam, 403 S.W.2d 784 (Tex.1965). This prohibition effectively prevents speculative recovery when there is no evidence from which profits could be intelligently estimated. Estimating future profits intelligently has been said to be difficult, if not impossible, when the business involved depends on uncertain and changing conditions, such as market fluctuations. *Riddle v. Lanier*, 136 Tex. 130, 145 S.W.2d 1094 (1941); *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097 (1938).

Although the general rule has thus correctly prohibited recovery of speculative and uncertain anticipated profits, more recent cases have held that a new business may use other data besides past profit history to show anticipated profits to a reasonable certainty. *See, e.g., White v. Southwestern Bell Telephone Co.*, 651 S.W.2d 260 (Tex.1983) (business records showing past developments and existing conditions sufficient to show loss of normal increase in business); *Pace Corp. v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955) (opinion of business owner based on prior similar business's profit history); *Pena v. Ludwig*, 766 S.W.2d 298 (Tex.App.1989, no writ) (opinion of business owner based on prior similar business's profit history); *Anbeck Co. v. Zapata Corp.*, 641 S.W.2d 608 (Tex.App.1982, writ ref'd n.r.e.) (contractu-

ally agreed upon consideration for sale of assets); *cf. Arabesque Studios, Inc. v. Academy of Fine Arts Int'l, Inc.*, 529 S.W.2d 564 (Tex.Civ.App.1975, no writ) (employer showed loss of particular clients and their continued business dealings with employee who terminated employment relationship and subsequently breached covenant not to compete). A vast majority of jurisdictions appear to have rejected the so-called "new business rule" as a per se rule of exclusion. *See* Annotation, *Recovery of Anticipated Lost Profits of New Business: Post–1965 Cases*, 55 A.L.R.4th 507 (1987).

Moreover, precise calculation of anticipated profits has never been essential to recovery by any business. It is sufficient if there is data from which the loss may be ascertained with reasonable certainty. *Southwest Battery*, 115 S.W.2d at 1099; *General Supply & Equipment Co. v. Phillips*, 490 S.W.2d 913, 921 (Tex.Civ. App.1972, writ ref'd n.r.e.). Whether data exists to show the anticipated profits of a new business to a reasonable certainty will depend on the facts and circumstances of each case. *Whiteside v. Trentman*, 141 Tex. 46, 170 S.W.2d 195, 197 (1943); *Automark of Texas v. Discount Trophies*, 681 S.W.2d 828, 829 (Tex.App.1984, no writ). We hold that the absence of a history of profits does not, by itself, preclude a new business from recovering lost future profits.

Prentice–Hall, as the summary judgment movant, had the burden of showing itself entitled to judgment as a matter of law. It attempted to do so only by showing that Orchid had no net profit in 1984. Prentice–Hall did not, however, attempt to disprove the existence of other data from which lost profits could be proven to a reasonable certainty; nor did Prentice–Hall even establish whether or not Orchid contends that such other data exists. If, by general pleading, a plaintiff seeks damages to which it may be entitled under two or more factual conditions, the defendant's conclusive negation of only one of those factual conditions does not establish its entitlement to judgment as a matter of law. Accordingly, Prentice–Hall's proof was insufficient to satisfy its summary judgment burden. Prentice–Hall having failed to meet its summary judgment burden, Orchid was not required, in order to avoid summary judgment, to bring forward other evidence showing its anticipated lost profits.

In its motion for rehearing, Prentice–Hall argues that Orchid did not raise in this Court the issue of whether Prentice–Hall satisfied its initial summary judgment burden. Rather, according to Prentice–Hall, Orchid's appellate brief raises only the issue of whether Orchid was making a profit at the time of the alleged contractual breach. Orchid's sole point of error states: "The trial court erred in granting summary judgment precluding the recovery of lost profits because the summary judgment evidence raised a genuine issue of material fact whether appellant was established and making a profit when the contract was breached."

It is certainly true that we may not reverse a trial court's judgment in the absence of properly assigned error. *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex.1990). However, in the present case Orchid's brief contains the following argument:

Finally, Orchid Software contends that the requisite for a profit at the time of the breach is not to provide a simple extrapolation model of damages. Indeed, in occasional cases no prior history of profits is even required. *Pace v. Jackson*, [155 Tex. 179] 284 S.W.2d 340 (Tex. 1955)[;] *Pena v. Ludwidg* [sic], 766 S.W.2d 298 (Tex.App.–Waco, 1989, no writ history). The law is quite specific that "other facts and circumstances" may establish lost profits. *Southwest Battery Corporation v. Owen*, supra.

In its reply brief, Prentice–Hall responded to the foregoing argument by attempting to distinguish *Pace* and *Pena*, asserting that "[t]here was no summary judgment evidence of any type of 'other facts or circumstances' which could take Orchid's claim for lost profits outside of the general rule requiring a history of profits." In effect, Prentice–Hall was arguing that it

had met its summary judgment burden merely by showing an absence of profit history, and that the burden had thereby been shifted to Orchid to produce evidence of "other facts or circumstances," i.e., other data, by which lost profits could be shown to a reasonable certainty.

We conclude that the foregoing argument is sufficient to raise in this Court the issue of whether the absence of a profit history, by itself, is sufficient to preclude a recovery of lost profits. Because we have concluded that such evidence, without more, is insufficient as a matter of law to support Prentice–Hall's summary judgment, Orchid had no obligation to raise this specific issue in its written response to the motion for summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) ("[T]he non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment.").

Moveover, even if the above-quoted argument did not constitute a complaint on appeal of the inadequacy of Prentice–Hall's summary judgment evidence, we hold that Orchid's evidence raised a fact issue as to Orchid's profit history. This issue centered around whether the monthly advances paid by Prentice–Hall to Orchid should be considered part of Orchid's "profits" for purposes of determining if that company had any history of profitability. In its response to Prentice–Hall's motion for summary judgment, Orchid submitted the affidavit of Gary Cadenhead, a certified public accountant licensed in Texas. The affidavit contained the following paragraph:

It is my opinion that Orchid Software, Inc. earned a profit for the year 1984 as reflected on the Profit and Loss Statement attached to the Affidavit of Michael Kahl, dated February 8, 1989, which I have reviewed and is submitted herewith. It is my opinion that pursuant to generally accepted accounting principles The Profit Center Royalties of $1,263,800 reflected on the Profit and Loss Statement should be recognized as income or reve-

nue for 1984, since, according to Kahl, such monies were paid to Orchid by Prentice–Hall irrespective of delivery of tested programs by Orchid to Prentice–Hall.

Prentice–Hall does not contend that Cadenhead's affidavit does not constitute evidence of profits earned by Orchid during 1984. Rather, Prentice–Hall asserts that any such profits are immaterial:

Whatever profit Orchid claims it made from the 1984 funding arrangement is not relevant to any profits it could have made from the sale of the accounting software. If considered income, those funds were in the nature of fees paid for the development of the product, and had no relation to money that would be earned from the sale of the product.

We disagree.

In support of its argument, Prentice–Hall cites cases standing for the proposition that, where a loss of profits is experienced by a discrete phase of a business, profits generated by a different area of the business may not be used to calculate profits lost by the injured phase. *See, e.g., Navistar Int'l Transp. Corp. v. Crim Truck & Tractor Co.*, 791 S.W.2d 241, 244 (Tex.App.1990, writ granted). Such cases are distinguishable from the present one. The software development process and the periodic advances paid by Prentice–Hall to Orchid appear from the record to have been inextricably linked with the anticipated sales of the software programs being developed by Orchid. Indeed, the letter by which Prentice–Hall confirmed its agreement to pay Orchid approximately $150,000 per month through 1984 stated that "these monies are advances against the future sales of software products." We cannot conclude as a matter of law that the advances were for a "separate business activity" from that which would produce royalties from future sales.

We reverse the trial court's judgment and remand the cause for further proceedings.